MARINERS (SIMS v.). See Case No. 12,-893.

## Case No. 9,086.

### MARINERS v. The WASHINGTON.

[1 Pet. Adm. 219.] [1]

### District Court, D. Pennsylvania. 1801.

SEAMEN'S WAGES — DEDUCTION — CONTRIBUTION— FOOD—QUANTITY—KIND—NAVY RATION.

[1. The vessel owner can retain wages of the crew, as a contribution for injuries from a collision alleged to have been caused by their negligence, until after the legal liability is established.]

2. The quantum or description of articles fixed for mariners in merchant ships, was not intended to be specifically according to the various kinds of esculents directed for the navy; but it was declared and agreed, that of such provisions as are ordered to be provided by merchants for their seamen, the quantities of the like kinds, furnished per diem, should be the same with those fixed for the navy. So of equivalents, where the designated species could not be obtained.

[Cited in Gardner v. The New Jersey, Case No. 5,233; The Elizabeth Frith, Id. 4,361; The Mary, Id. 9,191; The Childe Harold, Id. 2,676.]

The claim of the seamen consisted of two parts—

First. A demand for six dollars, each, retained by the owner [Ketland], to indemnify him against a suit brought against the master [Williamson], in a common law court, for running down and damaging a schooner at sea. This suit is pending and undetermined, and the captain agreed that he meant to contend the point; alleging that no negligence

[1] [Reported by Richard Peters, Jr., Esq.]

or misconduct on his part, or that of the crew, occasioned the accident.

BY THE COURT. It is clear to me, and must be well known to the counsel of the respondent, that the detainer of the six dollars out of each of the seamen's wages, is illegal. No contribution can legally be called for from them, until a recovery is had against the master, and the quantum ascertained. It is yet doubtful whether any damages will be recovered, for the accident mentioned. The master is satisfied that none are justly due. To withhold the payment under a bare possibility, is not warranted by law. As to what the merchant deems prudent and safe for himself, such considerations cannot control or destroy contracts. If negligence or malfeazance, on the part of the master and crew, had occasioned the accident, the mariners must, no doubt, contribute; but the fact and consequences must be legally established, before such contribution can be called for.

This point was given up, and the wages agreed to be paid.

The second demand was for a large sum, under the act of congress, for payment of additional wages, on account of short allowance, during the greater part of an East India voyage home. It was agreed that, to satisfy the words of the act of congress (designating what quantity and species of provisions should be on board at the departure of a ship destined across the Atlantic) "and so in proportion for a longer or shorter voyage," there should have been on board, previous to sailing, two hundred and fifty pounds wholesome meat, two hundred and fifty pounds good bread, and one hundred and fifty gallons of water, for each person, of whatever capacity or description, in the ship. The ration established for the navy,[2] was agreed to be that, by which the allowance of provisions to mariners should be regulated. There were eighty-four persons on board—the length of an India voyage was agreed to be equal to two and half voyages from America to an European port.

It appeared that the Washington was amply provided, previous to her departure from Philadelphia to India, not only with the requisite quantity for the voyage, of enumerated articles of provisions and water, but with a very considerable excess. In addition, there were flour, rice, and cabin-stores, in abundance. On her return, water was taken in, and provisions, though not of the specified articles, purchased. The passage was uncommonly long. Owing to over-care in the master, in putting the common ship-bread into tight casks, which happened not to be made of seasoned wood, twenty-six casks, out of thirty, were spoiled on the out passage. He therefore, gave bread of a better kind, in less quantities, making out the allowance in ample

[2] See Act Cong. July 1, 1797, "An act providing a naval armament" (section 7, vol. 4 [Folwell's Ed.] p. 14 [1 Stat. 524]), wherein the naval ration is established.

proportions, with other articles equivalent. At Batavia, the bread was saved, and except one biscuit per man, yams, rice and potatoes, were given in lieu thereof. But because the ration was not delivered, in the kind of esculents mentioned in the act of congress, and some precautions taken to ensure a sufficiency of provisions, the mariners now set up this demand.

BY THE COURT. The only ground for establishing a claim of the nature of the present demand, is a negligence in the master or owner, in not furnishing the ship before her departure from the port, with the quantity and species of provisions and water, required by law. Where these can be procured, no equivalents can be admitted as substitutes. But in ports, where the specific articles of provisions cannot be obtained, it would be unreasonable to suppose, that the spirit and intention of the law, do not permit equivalents, of other good and wholesome esculents, to be substituted and supplied, in place of provisions damaged or consumed. The owner or master is to take the best precautions to procure good and wholesome enumerated articles, which is often difficult in foreign ports. But they are not answerable for accidents happening to them, without negligence on their part. After the requisite quantity and species are taken in (where they can be obtained) the master is the sole judge of their expenditure. He must not wantonly deprive the crew of an ample allowance. It is not his interest, nor does it comport with his own comfort, or the safety of the ship, to produce, by unwarrantable privations, discontents, ill-humour and debility, in the crew. But if the voyage is likely to be uncommonly procrastinated; if provisions are, by accidents, diminished in quantity, he may, justifiably, abridge the usual allowance. There is not the shadow of reason to complain, where other provisions are substituted, for enumerated articles, damaged, consumed, or not to be procured. It appears, in this case, that there is no reasonable or legal ground of complaint. I therefore dismiss this claim.